PACT Renaissance Collaborative LLC v Crespo (2025 NY Slip Op 25185)

[*1]

PACT Renaissance Collaborative LLC v Crespo

2025 NY Slip Op 25185

Decided on August 11, 2025

Civil Court Of The City Of New York, New York County

Meyers, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on August 11, 2025
Civil Court of the City of New York, New York County

PACT Renaissance Collaborative LLC, Petitioner(s),

against
Paul Crespo, "JOHN DOE" and "JANE DOE", Respondent(s).

Index No. LT-302572-24/NY

Sperber Kahan Law Group PLLC (Eric H. Kahan, Esq.) for Petitioner 
Manhattan Legal Services (Thomas Honan, Esq.) for Respondent

Adam R. Meyers, J.

Recitation, as required by CPLR § 2219(a), of the papers considered in the review of the motion:
Papers NYSCEF Doc. Nos.
Notice of Motion (Seq. 1) and supporting papers 12-28
Affirmation in Opposition and supporting papers 33-35
Affirmation in Reply and supporting papers 36-39
Upon the foregoing cited papers, the court's decision and order is as follows:
This is a holdover proceeding in a former New York City Housing Authority development that underwent a conversion to private management under the Permanent Affordability Commitment Together (PACT) program in November 2020 (see Affirmation of Thomas Honan, NYSCEF Doc. No. 14, ¶¶ 14-15). Respondent Paul Crespo represents that he moved into the premises with his mother, Nilva Olan, in 1977 (see Affirmation of Paul Crespo, NYSCEF Doc. No. 13, ¶¶ 2). At all relevant times prior to her death in July 2021, both he and his mother were included on the household composition documents filed with NYCHA (id. at ¶¶ 3-4). After his mother's death, Crespo applied with NYCHA's Leased Housing Department to remove his mother from the household and to become head of household (see Section 8 Head of Household Request for Interim Change, NYSCEF Doc. No. 22). In December 2023, he received [*2]from Leased Housing a document entitled PACT Pilot Program Referral and Checklist PH (henceforth, the PACT Pilot Program Denial Letter), which stated in relevant part:
NYCHA has reviewed your PACT Transition Pilot Program Request to Become an Authorized Occupant and your request is denied for the reasons identified below.
Other: does not qualify for PACT Pilot, [tenant of record] passed away after conversion[.]
(NYSCEF Doc. No. 24).
Two months later, Petitioner—the net lessee and landlord—commenced this proceeding upon the theory that Respondent was a licensee whose license had been terminated (see Petition, NYSCEF Doc. No. 1). Crespo appeared and answered in September 2024 (see Answer, NYSCEF Doc. No. 10).
Crespo now moves for summary judgment and dismissal of the proceeding on three grounds. First, he argues that he is entitled to summary judgment on the question of his succession rights, and that upon determining his entitlement to succeed to the tenancy, the court must dismiss this licensee holdover proceeding. Second, he argues that the petition is defective insofar as it fails to include sufficient detail regarding the regulatory status of the premises in violation of RPAPL § 741, and that dismissal is therefore required. Finally, he argues that Petitioner has failed to serve a notice required under the Violence Against Women Act, and that dismissal is required on this basis as well. Petitioner opposes each part of the motion.
As discussed below, Crespo's motion for summary judgment is granted, and the petition is dismissed. The motions to dismiss are denied without prejudice as academic.
A. Motion for Summary Judgment on the Issue of Succession Rights
Respondent moves for summary judgment on the basis that the proofs presented establish conclusively his right to succeed to a subsidized tenancy at the premises, and that this licensee holdover proceeding must therefore be dismissed. In support of this motion, Respondent offers an affirmation and supporting documentation that tend to show:
• that Nina Olan was the tenant of record in the premises (see Crespo Aff. at ¶ 2; NYCHA Lease Addendum and Rent Notice, NYSCEF Doc. No. 17; Tenancy Addendum Section 8 Project-Based Voucher Program, NYSCEF Doc. No. 20);
• that Crespo is the son of Nina Olan (see Crespo Aff. at ¶ 2; Birth Certificate, NYSCEF Doc. No. 15);
• that Nina Olan died on July 19, 2021 (see Crespo Aff. at ¶ 5; Certificate of Death, NYSCEF Doc. No. 21);
• that Crespo lived at the premises with his mother since 1977, including the years immediately preceding her death (see Crespo Aff. at ¶¶ 2-4; Residency Documents, NYSCEF Doc. No. 23);
• that Crespo was included on all household composition documents with NYCHA for several years prior to the PACT conversion in 2020 (see Crespo Aff. at ¶ 3; NYCHA Lease Addendum and Rent Notice, NYSCEF Doc. No. 17);
• that Crespo was included on the household composition documents associated with the Section 8 project-based voucher after PACT conversion (see Crespo Aff. at ¶ 4; Tenancy Addendum Section 8 Project-Based Voucher Program, NYSCEF Doc. No. 20);
• that Crespo notified NYCHA regarding his mother's death and sought to become head of household at the premises on October 11, 2021 (see Crespo Aff. at ¶ 6; Section 8 Head of Household Request for Interim Change — Income Change/Removal, NYSCEF Doc. No. 22); and
• that NYCHA subsequently notified him in December 2023 that he did not qualify for the "PACT Pilot" on the basis that his mother died after the PACT conversion (see Crespo Aff. at ¶ 7; PACT Pilot Program Denial Letter, NYSCEF Doc. No. 24).
On the basis of these facts, Crespo argues that he has established his entitlement to succession at the premises.
Petitioner begins its opposition by identifying three questions that it alleges to represent disputed issues of material fact:
(a) whether Respondent Crespo qualifies as the successor tenant to the subject [p]remises, (b) whether Respondent Crespo is considered a licensee as a result of NYCHA's denial of his succession rights to the subject [p]remises after the passing of the tenant-of-record, Ms. Nilva Olan, and (c) whether NYCHA should have recognized Respondent Crespo as the successor tenant to Ms. Olan
(see Affirmation of Eric H. Kahan, NYSCEF Doc. No. 33, ¶ 9). Petitioner's argument boils down to the assertion that the denial reflected by the PACT Pilot Program Denial Letter forecloses upon Crespo's ability to assert a claim for succession rights in this proceeding and instead relegates his claims to a grievance hearing before NYCHA or an Article 78 proceeding challenging the denial. Until such time as Crespo succeeds in establishing his right to succeed through these avenues, Petitioner argues, he remains a mere licensee subject to eviction following his mother's death.
Summary judgment is proper only when there are no disputed issues of triable fact (Alvarez v Prospect Hospital, 68 NY2d 320, 324 [1986]). The proponent of a motion for summary judgment has an initial burden to produce evidence and argument sufficient to demonstrate the absence of any disputed issue of material fact and the right to judgment as a matter of law (Zuckerman v City of New York, 49 NY2d 557 [1990]). If the moving party meets this burden, the burden then shifts to the opposing party to submit proof in admissible form sufficient to identify a question of fact requiring a trial (Kosson v Algaze, 84 NY2d 1019 [1995]).
The factual assertions undergirding Crespo's motion—insofar as related by the court, supra—are unrebutted by Petitioner. Indeed, despite the quoted language above to the contrary, Petitioner does not identify any disputed issue of fact, material or immaterial, requiring resolution at trial. What remains are questions of law appropriate for determination at the summary judgment stage.
But before Crespo's succession rights can be addressed, three preliminary questions must be considered. First, what body of law governs succession in a former NYCHA unit after PACT conversion? Second, is Housing Court an appropriate forum for determination of succession [*3]claims for these residents? Finally, do Crespo's application to NYCHA to assume head of household status and NYCHA's apparent response bar Crespo from litigating this claim here? These questions will be addressed in turn.
1. What rules govern succession rights following a PACT conversion?
PACT is NYCHA's local implementation of HUD's Rental Assistance Demonstration program (RAD). Broadly speaking, RAD provides a pathway for local public housing authorities (PHAs) to convert developments from wholly public ownership and operation funded under Section 9 of the U.S. Housing Act of 1937 (42 USC § 1437g) to partnerships of public ownership and private management funded under Section 8 (42 USC § 1437f). A PHA executing a RAD conversion can access Section 8 funding either through project-based vouchers (PBV) or project-based rental assistance (PBRA). NYCHA has elected to utilize PBV funding in connection with its PACT conversions (see June 2025 Administrative Plan, § XXIX, 
https://www.nyc.gov/assets/nycha/downloads/pdf/hcpvadministrative.pdf, last accessed Aug. 10, 2025).
Until the conversion, Crespo's unit was part of a NYCHA development and was therefore subject to NYCHA's Occupancy and Succession Policy (OSP) (NYSCEF Doc. No. 35). Under the OSP, a person can take over a lease following the death of the tenant of record if they qualify as a Remaining Family Member (RFM) by
a. having been an authorized household member listed on the lease during the course of the tenancy,
b. having resided in the unit for at least twelve months after obtaining permanent permission to live there and immediately prior to the death of the tenant of record,
c. having remained continuously in the unit and been included on all income affidavits,
d. making any use and occupancy payments calculated by NYCHA, and
e. being otherwise eligible for occupancy.
(see OSP, NYSCEF Doc. No. 35, § II [A]).
After the PACT conversion, the regulations applicable to PBV developments would have determined the question. The PBV regulations are codified at 24 CFR Parts 982 and 983 and are supplemented locally by NYCHA's Housing Choice Voucher Program Administrative Plan. As of a February 2025 revision, the Administrative Plan requires only that a potential RFM be an active household member with permanent status at the time of the head of household's death, be eligible to continue receiving the subsidy in question, and have legal capacity to sign a lease (see, e.g., June 2025 Administrative Plan, Appx. B, § G). However, prior to this update, the Administrative Plan appears to have deferred the question back to the OSP (see October 2023 Administrative Plan, § V [A], https://web.archive.org/web/20250208023350/ https://www.nyc.gov/assets/nycha/downloads/pdf/hcpvadministrative.pdf, last accessed Aug. 10, 2025 ["Succession rights to the Section 8 subsidy are determined pursuant to NYCHA's Occupancy and Succession Policy."]). Thus, the substantive eligibility criteria applicable at the time of Crespo's application and his mother's death are those listed above and found in the OSP.
2. Can the Housing Court determine the question of succession rights in PACT [*4]conversion units?
Whether Housing Court can determine questions of succession rights varies depending on the program in question. It is clear, for example, that Housing Court is an appropriate forum for determination of succession rights in the rent stabilization (see 530 Second Ave. Co., LLC v Zenker, 160 AD3d 160 [1st Dept 2018]), rent control (see Bromer v Rosensweig, 166 Misc 2d 201 [App Term, 1st Dept 1995]), and project-based Section 8 (see Los Tres Unidos Assoc., LP. v Colon, 45 Misc 3d 129(A) [App Term, 1st Dept 2014]) contexts. On the other hand, Housing Court generally does not determine succession questions for Mitchell-Lama residents (Gouverneur Gardens Hous. Corp. v Belmlinsky, 23 Misc 3d 126(A) [App Term, 1st Dept 2009]), tenant-based Section 8 vouchers (see, e.g., Evans v Franco, 93 NY2d 823 [1999]), or NYCHA's Section 9 households (see, e.g., New York City Hous. Auth. Albany Houses v Collins, 4 Misc 3d 135(A) [App Term, 2d Dept 2004]). In these cases, the questions are usually relegated to administrative processes under the applicable PHA or supervising agency, with judicial review available via Article 78 challenges to the resulting administrative decisions. The general rule seems to be that the Housing Court will decline to determine these issues where there exists a robust administrative mechanism capable of affording due process to a resident (as with NYCHA and Mitchell-Lama succession questions) or where the question of succession to a rental subsidy is entirely independent from the question of possession central to a summary proceeding (as with tenant-based vouchers).
These general considerations militate in favor of Housing Court's jurisdiction over the succession issue in this case. As with PBRA developments, the Section 8 funding at issue is not simply a third-party subsidy but is intimately involved with the tenancy itself. Petitioner argues here not simply that Respondent's purported ineligibility to succeed as head of household would deny him a subsidy, but that it denies him tenancy as well, relegating him to the status of licensee. Unlike with NYCHA or Mitchell-Lama units, and as discussed further below, the record does not establish that there was at the time of the application a clear administrative process for determination of succession following a PACT conversion. While there appears to be no appellate authority on point, at least one reported trial court decision has implicitly recognized the Housing Court's authority to determine succession in a PACT PBV unit (Twin Parks Owner LLC v McKenley, 86 Misc 3d 1231[A] [Civ Ct, Bx Cnty 2025]), and two others have determined questions of succession in similar Enhanced Tenant-Based Voucher—i.e. "sticky" voucher—units (see Riverside Park Community LLC v Springs, 50 Misc 3d 1217(A) [Civ Ct, NY Cnty 2015]; BSREP UA 3333 Broadway LLC v Honario, 2019 NYLJ LEXIS 4005 [Civ Ct, NY Cnty 2019]). In view of these considerations, the court concludes that Housing Court has jurisdiction to determine this question.
3. Does the PACT Pilot Program Denial Letter foreclose upon Crespo's ability to obtain a positive determination of his succession claim?
Petitioner's primary argument in opposition to the motion for summary judgment is that the PACT Pilot Program Denial Letter constitutes a prior administrative denial of Respondent's claim. Petitioner claims that Crespo's failure to pursue administrative remedies or an Article 78 proceeding after that denial bars him from challenging the determination here. Crespo disputes this, arguing that the Denial Letter did not constitute any kind of determination on the merits of [*5]his claim, but rather reflects a technical rejection of his request on the basis that it was made or routed through the wrong administrative channel. He also argues that there simply was no clear administrative process of which he could have availed himself.
In general, where an administrative agency has already determined a succession claim against an applicant, the doctrines of res judicata and collateral estoppel prevent relitigation of the issue before a court (New York City Hous. Auth. Albany Houses v Collins, 4 Misc 3d 135(A), *1 [App Term, 2d Dept 2004]). Here, though, two considerations lead the court to conclude that Crespo's claim is not barred. First, res judicata and collateral do not apply because the Denial Letter did not address the merits of Crespo's succession claim (see Jeffreys v Griffin, 1 NY3d 34, 39 [2003] [prior determination must "necessarily determine" the issue in question to allow collateral estoppel]; Mays v New York City Police Dept., 48 AD3d 372, 373 [1st Dept 2008] [res judicata prevents litigation of a claim where a party previously obtained judgment on the merits]). The Denial Letter, by its own language, is not a merits determination on the question of succession rights. It purports to deny Crespo's "PACT Transition Pilot Program Request to Become an Authorized Occupant," reasoning that he did not qualify for the PACT Pilot Program on the basis that his mother passed away after the conversion. The court takes judicial notice of the fact that the Pilot Program is an initiative to allow unauthorized but otherwise eligible residents of NYCHA apartments to become authorized tenants after PACT conversion.[FN1]
There is no evidence that Crespo ever sought relief under the Pilot Program, and insofar as he was already an authorized resident both before and after conversion, he needed no relief from it. The Denial Letter does not discuss or determine any request for succession under the rules applicable to his situation.
Second, even if the Denial Letter were a merits determination, the issue may nevertheless be addressed in this summary eviction proceeding because the record does not show that Crespo was ever afforded an opportunity to have a hearing on his claim. Even in circumstances where a governmental agency would ordinarily determine a succession question, the failure of that agency to afford a hearing allows the Housing Court to entertain the defense (see, e.g., City of New York v Scott, 239 AD2d 113, 114 [1st Dept 1997] [allowing resident of City-owned building to raise succession in holdover proceeding after HPD's process gave him no meaningful opportunity to confront evidence, no notice of facts relied upon by the agency, and no notice of his right to bring an Article 78 proceeding]; New York City Hous. Auth.-Fulton Houses v Alicea, 63 Misc 3d 502, 504-505 [Civ Ct 2019] [allowing NYCHA succession claim in licensee holdover proceeding where no evidentiary hearing was held by the agency and the resident had no access to a guardian ad litem]).
Here, all parties agree that no evidentiary hearing was held. There is no representation that Respondent was ever informed of any rights to escalate his application with a grievance—as [*6]was apparently Petitioner's obligation [FN2]
—or to commence an Article 78 proceeding. Furthermore, the mechanism by which such a hearing could even have been requested is not clear to the court. While the 2025 amendment to NYCHA's Administrative Plan states that requests for succession and challenges to administrative denials of succession are to be processed through NYCHA's Leased Housing Division (see June 2025 Administrative Plan, Appx. B, §§ G & H), this was not the case under prior versions of the Administrative Plan. As noted above, prior versions of the plan expressly deferred questions of succession to NYCHA's Occupancy and Succession Policy, which lays out a process whereby succession-related grievances are first brought to the development housing manager, then automatically reviewed by NYCHA's borough management department, and finally appealed to the Impartial Hearing Office (see OSP, NYSCEF Doc. No. 35, § III). But this process is flatly contradicted the Administrative Plan's discussion of enhanced procedural rights for PACT tenants, which provide that the informal hearing regarding succession or other tenancy approval issues is the responsibility of the owner rather than the PHA (October 2023 Administrative Plan, § XXIX [B] [7] [b] [i] ["For any additional hearings required under RAD, the owner will perform the hearing."]; see generally, fn. 2, supra). While Petitioner annexes the OSP to its opposition papers as evidence of the process Crespo should have undertaken, it simultaneously relies upon the Denial Letter from NYCHA's Leased Housing Department, which seems to have no role in the process articulated in the OSP.
Given the uncertain procedural steps that should—or could—have been taken by Crespo, the lack of any evidentiary hearing, and the apparent lack of notice regarding the availability of administrative or legal remedies, the court concludes that determination of this issue in the context of a summary holdover proceeding is appropriate.
4. Is Crespo entitled to succeed to his mother's tenancy?
As noted above, Crespo's factual allegations are unrebutted. His sworn affirmation reflects that he lived in the unit in question with his mother—the tenant of record—since 1977. He offers proof that he was included in the household composition both before and after the PACT conversion, and a wealth of documents tending to show that he resided in the unit for [*7]more than a year prior to his mother's death. Petitioner has not identified any basis on which Crespo might otherwise be ineligible under NYCHA's policies or regulations. On this showing, and without any proof to the contrary identifying any disputed issue of material fact, the court concludes that Crespo is entitled to succeed to his mother's tenancy under the criteria laid out in NYCHA's OSP. Because this proceeding is predicated upon the allegation that Crespo is a mere licensee, the petition must be dismissed.
THEREFORE, it is
ORDERED that Respondent's motion for summary judgment is GRANTED and that the petition is dismissed; and
ORDERED that Respondent's motions to dismiss are denied without prejudice as academic.
This constitutes the decision and order of the court.
Dated: August 11, 2025
New York, New York
Hon. Adam R. Meyers
Judge, Housing Court

Footnotes

Footnote 1:See Office of the Comptroller of the City of New York, Audit Report on the New York City Housing Authority's Eviction Processes, p. 3 (Dec. 18, 2024) ("NYCHA created a pilot program for PACT in 2020 to provide a pathway to tenancy for residents who are occupying an apartment even if the tenant of record is no longer living there[.]")

Footnote 2:HUD's regulations for tenant-based and project-based vouchers provide that generally no hearing is required for "a PHA determination not to approve a unit or tenancy" (24 CFR § 982.555 [b] [5]). Residents of PACT developments, however, are entitled to additional procedural rights. For these residents,
 an informal hearing must be given to residents for any dispute that a resident may have with respect to an owner action in accordance with the individual's lease or the contract administrator in accordance with RAD PBV requirements that adversely affect the resident's rights, obligations, welfare, or status.
(October 2023 Administrative Plan, § XXIX [B] [7] [b] [i]). For these expanded hearings available specifically to PACT residents, it is the owner's responsibility to notify residents "of their ability to request an informal hearing" and to provide "opportunity for an informal hearing before an eviction" (id. at § XXIX [B] [7] [b] [iii-iv]).